IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NORTHWESTERN CORPORATION, | Bankruptcy Case No. 03-12872 (JLP) |
| Reorganized Debtor. | |
| NORTHWESTERN CORPORATION and CLARK FORK AND BLACKFOOT, LLC, | Adv. No. 05-52525 |
| Plaintiff, | |
| v. | |
| MARGARET A. McGREEVEY, JO ANN BARKELL, and JOSEPH MARTELLI, on behalf of themselves and the class of similarly situated individuals, | |
| Defendants. | |

**NORTHWESTERN CORPORATION'S AND CLARK FORK AND BLACKFOOT, LLC'S OPPOSITION TO THE MCGREEVEY DEFENDANTS' MOTION FOR LEAVE TO APPEAL INTERLOCUTORY ORDER**

NorthWestern Corporation ("NorthWestern"), Clark Fork and Blackfoot, LLC ("Clark Fork," collectively with NorthWestern, the "NorthWestern Entities"), by and through their undersigned counsel, hereby submits their opposition to the Motion for Leave to Appeal Interlocutory Order (the "Motion") filed on or about November 30, 2005 by Margaret A. McGreevey and other former shareholders of the Montana Power Company (the "McGreevey Defendants"), and respectfully state as follows:

**PRELIMINARY STATEMENT**

The McGreevey Defendants are not entitled to appeal the Bankruptcy Court's Memorandum of Decision and Order (the "Order") granting a preliminary injunction enjoining

LEGAL_US_W # 53116475.2

the McGreevey Defendants from proceeding with the Montana State Court Litigation[1] as a matter of law. The McGreevey Defendants have failed to demonstrate extraordinary circumstances necessary to warrant the granting of their Motion where there was no error in the Bankruptcy Court's decision and the decision is clearly supported by the record, the law and an opinion that manifests due deliberation. In its ruling which is the subject of this appeal, the Bankruptcy Court specifically found:

> To establish a substantial likelihood of success on the merits, NOR must show that it will have a fair chance of success on the merits. By reason of my conclusion that the McGreevey class was not and could not be a pre-petition creditor of NOR, it has no chance to establish a constructive trust under Montana's Fraudulent Transfer Act. NOR and its creditors and shareholders in the reorganized company <u>will suffer immediate and irreparable harm</u> if the McGreevey class is permitted to continue to prosecute the state court action in any forum. Under settled law, where a party unilaterally violates a bankruptcy court order, that violation, standing alone, constitutes the only harm necessary for an injunction.

Order, pp. 12-13 (emphasis added). For these reasons, and as more fully set forth below, the Court should deny the McGreevey Defendants' Motion for an order granting leave to file an interlocutory appeal.

The McGreevey Defendants should not be granted leave to file an interlocutory appeal of the Order enjoining the McGreevey Defendants from proceeding with the Montana State Court Litigation where NorthWestern's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated as of August 18, 2004 (the "Plan")[2] clearly provided for the treatment of the claims filed by the McGreevey Defendants. As the Bankruptcy Court noted, and which the McGreevey Defendants have never denied, the McGreevey Defendants

---

[1] "Montana State Court Litigation" means that certain litigation styled as <u>McGreevey, et al. v. Montana Power Company, et al.</u>, Case No. DV-05199, Montana Second Judicial District Court, Butte-Silver Bow County.
[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

were provided notice of NorthWestern's proposed Plan and failed to object to the specific treatment of their claims under the Plan prior to confirmation. See Order, p. 11. The Plan has been confirmed, gone effective and has been consummated, and the issues that could have been raised by the McGreevey Defendants prior to confirmation cannot now be revisited.

The McGreevey Defendants' assertions that their Motion should be granted on the basis that the D&O Trust Documents are not applicable to their claims because the Montana Power Company's ("MPC") D&O policies are not part of NorthWestern's bankruptcy estate are groundless. The McGreevey Defendants fail to distinguish between (i) the fact that they filed claims, and (ii) whether and to what extent those claims may be allowed and paid by certain insurance proceeds. NorthWestern's Plan clearly denotes the distinction and specifically provides for the treatment of the McGreevey Defendants' claims by channeling such claims to the D&O Trust.

The Bankruptcy Court correctly entered the Order enjoining the McGreevey Defendants from proceeding with the Montana State Court Litigation in light of the express provisions of the confirmed Plan. For example, the Bankruptcy Court found:

> It is also well established that where a creditor or person files a proof of claim, and has the opportunity to contest the disclosure statement or proposed plan of reorganization particularly to assert a constructive trust or fraudulent conveyance action and does not do so in the bankruptcy case, when it could or should have done so, is barred from asserting that claim in another forum.

Order, p. 10. The record clearly and overwhelmingly supports the Bankruptcy Court's conclusion that the McGreevey Defendants should be enjoined from proceeding with the Montana State Court Litigation. The granting of the preliminary injunction does not terminate the McGreevey Defendants' rights to litigate their claims against NorthWestern in the

appropriate forum. Rather, the McGreevey Defendants' claims are subject to allowance or disallowance in accordance with the claims objections and bankruptcy process.

## COUNTERSTATEMENT OF FACTS

### I. THE CHAPTER 11 CASE

On September 14, 2003 (the "Petition Date"), NorthWestern filed its voluntary petition for relief under chapter 11 of The Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"). On October 19, 2004, the Bankruptcy Court entered its Order Confirming Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Confirmation Order"). The effective date (the "Effective Date") under the Plan occurred on November 1, 2004 and NorthWestern exited from Chapter 11. At this time, the Plan has been substantially consummated.

The Plan expressly granted the Court exclusive jurisdiction to address pre-petition claims and provides in pertinent part that:

> Following the Effective Date, the Bankruptcy Court shall have the exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and this Plan pursuant to, and for the purposes of, Section 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:
>
> * * *
>
> (a) to hear and determine any and all objections to the allowance of any Claims or any controversies as to the classification of any Claims:
>
> * * *
>
> (e) to enforce the provisions of this Plan, including the injunction, exculpation and releases provided for in this Plan;
>
> * * *
>
> (k) to hear and determine any matters relating to the D&O Trust.

Plan, § 13.1.

Moreover, Section 10.5(a) of the Plan expressly enjoins parties from pursuing pre-petition claims as follows (the "Plan Injunction"):

> Injunction Related to Discharge. As of the Effective Date and subject to its occurrence, all Persons that have held, currently hold or may have asserted, directly, indirectly, derivatively or otherwise, a Claim, a Cause of Action or an Equity Interest or other right of a holder of an Equity Interest that is discharged, released or terminated pursuant to this Plan, are hereby permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order, creating, perfecting or enforcing any lien or encumbrance, asserting a set-off, or right of subrogation of any kind against any Debt, liability or obligation due to any such releasing Person, and from commencing or continuing any action, in any manner or in any place where the foregoing does not comply with or is inconsistent with the provisions of this Plan, and the Confirmation Order shall provide for such injunctions.

Further, Section 10.5(e) of the Plan sets forth the terms of the D&O Trust Channeling Injunction as follows:

> The sole recourse of the holder of a D&O Trust Claim in respect of such Claim shall be the D&O Trust pursuant to the provisions of the D&O Trust Channeling Injunction and the TDP, and such holder shall have no right whatsoever at any time to assert its D&O Trust Claim against the Debtor, Reorganized Debtor or any Released Party or any property or interest in property of the Debtor, Reorganized Debtor or any Released Party. Without limiting the foregoing, from and after the Effective Date, the D&O Trust Channeling Injunction shall apply to all holders of D&O Trust Claims including, without limitation, holders of Indemnification Claims in connection with any D&O Proceeding, and all such holders shall be permanently and forever stayed, restrained and enjoined from taking any of the following actions for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any D&O Trust Claims, other than from the D&O Trust in accordance with the D&O Trust Channeling Injunction and pursuant to the D&O Trust Documents:
>
> (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including a judicial, arbitration, administrative or other proceeding) in any

forum against or affecting the Debtor, Reorganized Debtor or any Released Party or any property or interests in property of the Debtor, Reorganized Debtor or any Released Party.

The Confirmation Order itself provides that "This Court retains jurisdiction of this Chapter 11 Case, pursuant to, to the extent and scope of, and for the purposes set forth in Article XIII of the Plan." Confirmation Order, p. 95.

## II. MCGREEVEY PRE-PETITION CLAIMS

By Order dated October 10, 2003, this Court established January 15, 2004 at 5:00 p.m. (Pacific Standard Time) (the "Bar Date") as the deadline for creditors to file proofs of claim for each claim they assert against the Debtor that arose before the Petition Date. The McGreevey Defendants timely filed two proofs of claim, designated as claim numbers 691 ("Claim No. 691") and 744 ("Claim No. 744") by the Debtor's claims agent (collectively, the "Pre-Petition McGreevey Claims"). Claim No. 691 asserts a $3,000,000,000 claim in connection with that certain litigation styled as <u>McGreevey, et al. v. Montana Power Company, et al.</u>, Case No. DV-01-141, Montana Second Judicial District Court, Butte-Silver Bow County (the "McGreevey Securities Litigation"). In the McGreevey Securities Litigation, the McGreevey Defendants, as former shareholders of The Montana Power Company ("MPC"), asserted claims in connection with the sale of all or substantially all of MPC's assets. The McGreevey Securities Litigation was stayed as to NorthWestern as a result of NorthWestern's bankruptcy filing and at no time during NorthWestern's bankruptcy proceeding did the McGreevey Defendants seek relief from the stay to continue the McGreevey Securities Litigation as to NorthWestern.

Claim No. 744 asserts a $600,000,000 claim in connection with the transfer of assets of NorthWestern Energy, LLC to NorthWestern. The claim alleges that the assets were transferred for less than fair and adequate consideration in violation of the applicable fraudulent transfer law. The Montana State Court Litigation is based on the same factual allegations of the

McGreevey Defendants set forth in Claim No. 744 and is an attempt by the McGreevey Defendants to utilize a state law forum post-confirmation to determine pre-petition claims against NorthWestern's bankruptcy estate.

In addition, the McGreevey Defendants filed, on or about April 27, 2004, a Motion for an Order Granting Relief from the Automatic Stay to Commence Adversary Proceeding Relating to Assets Upstreamed to the Debtor by Clark Fork and Blackfoot, LLC (the "McGreevey Motion for Relief from Stay"). In the McGreevey Motion for Relief from Stay, the McGreevey Defendants sought leave to pursue in NorthWestern's bankruptcy case as an adversary proceeding the same pre-petition allegations set forth in Claim No. 744, namely that the transfer of assets NWE to NorthWestern constituted a fraudulent transfer and asserting that NorthWestern allegedly holds such assets in constructive trust for the McGreevey class and other creditors of Clark Fork.

On or about June 16, 2004, the Bankruptcy Court entered its Memorandum Decision granting the McGreevey Motion for Relief from Stay. As noted by the Bankruptcy Court in its Order, the McGreevey Defendants elected, for reasons known only to them, not to pursue the adversary proceeding and the complaint was never filed. See Order, p. 6.

On August 13, 2004, NorthWestern filed its Motion for Order Pursuant to Bankruptcy Rule 9019 Approving the Memorandum of Understanding (the "McGreevey 9019 Motion") seeking approval of a settlement agreement resolving certain pending litigation, including the McGreevey Securities Litigation. Under the proposed settlement, NorthWestern would receive a full release and discharge, and withdrawal of any and all claims and causes of actions asserted or filed and which could have been asserted or filed with respect to the McGreevey Securities

Litigation. In the event the settlement documents were not finalized and or approved by the Court, the parties would return to their litigation positions on July 10, 2004.

On May 17, 2004, NorthWestern filed with the Bankruptcy Court its First Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "First Amended Plan"). The McGreevey Defendants were provided notice of the filing of the First Amended Plan as well as notice of the confirmation hearing scheduled for August 25, 2004.

On or about August 31, 2004, NorthWestern filed its Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code. The McGreevey Defendants were provided notice of the filing of the Plan as well as notice of the continued confirmation hearing scheduled for October 6, 2004.

As further evidence that the McGreevey Defendants were knowledgeable of the confirmation process the McGreevey Defendants negotiated a stipulation with NorthWestern extending the deadline for the McGreevey Defendants to object to confirmation of the proposed plan of reorganization. Despite the agreed extension, the McGreevey Defendants never objected to the Plan, either orally or in writing. Counsel for the McGreevey Defendants also made no objection on the record at either the August 25, 2004 or October 6, 2004 confirmation hearings.

NorthWestern's Plan was confirmed by the Bankruptcy Court on October 19, 2004. The McGreevey Defendants did not file an appeal of the Confirmation Order, as such, the Confirmation Order is final as to the treatment of the McGreevey Pre-Petition Claims.

Pursuant to Section 1.47 of the Plan, the McGreevey Securities Litigation is classified as a D&O Proceeding. As set forth in Section 1.56 of the Plan, any final award apportioned to a plaintiff in the McGreevey Securities Litigation shall be classified as a D&O Trust Claim. Section 10.5 of the Plan provides that the sole recourse of a holder of a D&O Trust Claim shall

be the D&O Trust established under the Plan. Under the Plan and Confirmation Order, a holder of a D&O Trust Claim is prohibited from asserting its D&O Trust Claim against the NorthWestern Entities.

### III. THE MONTANA STATE COURT LITIGATION

The newest McGreevey class complaint asserts that: (i) the transfer of the Montana Utility Business was fraudulent under Montana law alleging an actual intent to hinder, delay or defraud creditors; (ii) the transfer of the Montana transmission and distribution assets from Clark Fork to NorthWestern constituted a fraudulent transfer within the meaning of § 31-2-333(1)(b), MCA; (iii) the transfer of the Montana transmission and distribution assets from Clark Fork to NorthWestern was fraudulent as to the McGreevey Defendants under § 31-2-334(1), MCA; (iv) NorthWestern breached its duties arising out of the stipulations and representations to the McGreevey Defendants and seeking recognition of an express, implied and/or constructive trust; and (v) NorthWestern's use of the Montana transmission and distribution assets to obtain financing and for the benefit of its creditors constitutes unjust enrichment at the expense of Clark Fork and the alleged creditors of Clark Fork including the McGreevey Defendants. This new Montana State Court Litigation alleges identical pre-petition claims as set forth in the McGreevey Fraudulent Transfer Claim, specifically, the allegation that the transfer of the transmission and distribution assets to NorthWestern was fraudulent under Montana law.

## ARGUMENT

### I. THE APPEAL IS NOT APPROPRIATE AT THIS TIME

The McGreevey Defendants identify the following two (2) issues in their Statement of Issues and Designation of Record:

> 1. Did the Bankruptcy Court err in failing to apply the Plan's explicit reservation of pre-petition fraudulent transfer claims?
>
> 2. Do the D&O Trust provisions apply to the McGreevey claim which is insured under policies which are outside of the NorthWestern estate?

As identified by the McGreevey Defendants the issues are not ripe for appeal. Courts have held that an appellant must show that he or she is a "person aggrieved." See In re Cosmopolitan Aviation Corp., 763 F.2d 507, 513 (2d Cir. 1985) ("relying on pre-Code law, a number of courts have adopted a standard that requires an appellant to show that he is a 'person aggrieved,' that he is 'directly and adversely affected pecuniarily by' the challenged order of the bankruptcy court") and In re Salant Corp., 176 B.R. 131, 133 ("the appellant, in order to have standing to appeal a bankruptcy court order, must be a 'person aggrieved'"). The McGreevey Defendants cannot establish that they have been genuinely aggrieved at this stage in the proceedings because the McGreevey Defendants may pursue their claims before the Bankruptcy Court.

Specifically, as to the first issue, the release language of the Plan provides that certain types of claims will remain subject to allowance or disallowance in accordance with the claims objections and bankruptcy process. The Bankruptcy Court in granting the preliminary injunction held that by filing their proofs of claims the McGreevey Defendants subjected themselves to the jurisdiction of the Bankruptcy Court and may not seek allowance or disallowance of those claims outside the Bankruptcy Court's jurisdiction. To the extent the McGreevey Defendants have a pre-petition fraudulent claim such claims are subject to determination in the Bankruptcy Court.

As to the second issue, the Bankruptcy Court expressly stated that it was not making a determination as to whether the McGreevey Defendants' claims were channeled to the D&O Trust pursuant to the confirmed Plan. The Court found that "due to my finding and conclusion

that the McGreevey class was not and is not a creditor of NOR pre-petition I need not pass on NOR's position" regarding whether the McGreevey Defendants' claims are channeled to the D&O Trust. Order, p. 12. To the extent the McGreevey Defendants wish to pursue their assertion that the McGreevey Defendants' claims, despite the express provisions of the Plan, are not channeled to the D&O Trust such argument must be brought before the Bankruptcy Court for final determination before any appeal can be taken.

The appeal of the Bankruptcy Court's Order on the issues set forth by the McGreevey Defendants' is premature at this time. As set forth in the Bankruptcy Court's Order, the McGreevey Defendants must pursue their claims in the Bankruptcy Court. The McGreevey Defendants cannot be allowed to appeal the Bankruptcy Court's Order until the Bankruptcy Court has made a final determination as to the issues identified for appeal by the McGreevey Defendants.

## II.  THE BANKRUPTCY COURT'S ORDER IS NOT ERRONEOUS

While the McGreevey Defendants contend that the Bankruptcy Court's decision to enjoin the prosecution of the Montana State Court Litigation is erroneous, they fail to, and indeed, cannot, demonstrate that the Bankruptcy Court exceeded its authority or committed clear error. See Doebler's Pennsylvania Hybrids, Inc. v. Doebler Seeds, LLC, 2004 U.S. App. LEXIS 2420, *522 (3d Cir. February 12, 2004) ("a preliminary injunction is an appealable interlocutory order under 28 U.S.C. § 1292(a)(1). We review a District Court's grant of a preliminary injunction for abuse of discretion, error of law, or clear mistake of fact") (citation omitted). Neither the evidence nor the law supports the McGreevey Defendants' claim of error.

The Bankruptcy Court considered the provisions of the confirmed Plan, the McGreevey Defendants' participation in the bankruptcy case, and the arguments made by counsel and found:

> In sum, the McGreevey class cannot be permitted to "end run" the confirmation process and order confirming the plan by erroneously asserting an equitable interest in the Montana utility assets which were and are a necessary and essential part of the confirmed plan of reorganization. the preliminary injunction will preserve the rights of the debtor and creditors who relied upon the plan and thus preserve the status quo.

Order, p. 13.

Moreover, the Bankruptcy Court found that **"where a party unilaterally violates a bankruptcy court order, that violation, standing alone, constitutes the only harm necessary for an injunction."** Order, pp. 12-13 (emphasis added) (citing In re Tippins, 221 B.R. 11 (Bankr. N.D. Ala. 1998); In re Steffan, 97 B.R. 741 (Bankr. N.D.N.Y. 1989); In re McNeil, 128 B.R. 603 (Bankr. E.D. Pa. 1991)). As set forth above, the confirmed Plan specifically provides that the McGreevey Defendants' claims are subject to the Plan Injunction and the D&O Trust Channeling Injunction. Accordingly, the Bankruptcy Court did not err in entering an order preliminarily enjoining the McGreevey Defendants from prosecuting the Montana State Court Litigation in violation of the express Plan provisions.

### III. THE BANKRUPTCY COURT DID NOT ERR IN DETERMINING THAT THE CLAIMS ARE SUBJECT TO THE PLAN INJUNCTION

A confirmed plan acts like a contract and binds those parties participating in a plan. See, e.g., In re Wolfberg, 255 B.R. 879, 883 (B.A.P. 9th Cir. 2000); In re Ionosphere Clubs, Inc., 262 B.R. 604, 612 (Bankr. S.D.N.Y. 2001) ("[a]n order of confirmation binds the debtor and its creditors whether or not they have accepted the confirmed plan and thus, it has preclusive effect"). It is undisputed that the McGreevey Defendants participated in NorthWestern's bankruptcy case by, among other things, filing their two proofs of claims, seeking relief from the automatic stay and participating in the confirmation process. The premise of the Montana State Court Litigation is that the Montana transmission and distribution assets were not properly part

of NorthWestern's bankruptcy estate. However, the McGreevey Defendants are now precluded from litigating the issue since they did not effectively raise this issue and litigate it to conclusion prior to confirmation. See, e.g., Miller v. U.S., 363 F.3d 999 (9th Cir. 2004); In re Newport Offshore, Ltd., 78 B.R. 383 (Bankr. D.R.I. 1987).

Indeed, Third Circuit law clearly holds that a creditor who had an opportunity to contest the language in a debtor's proposed plan that provided for the treatment of the creditor's alleged fraudulent conveyance claim is barred by a confirmed plan from later asserting those claims in another forum post-confirmation. See In re PWS Holdings Corp., 303 F.3d 308 (3d Cir. 2002) (creditor who did not appeal plan's treatment of fraudulent transfer claims is precluded from later prosecuting those claims in state court). Where, as here, the Plan has been confirmed, issues that could have been raised prior to confirmation cannot be revisited by the McGreevey Defendants. Any dispute is subject to the bankruptcy court's jurisdiction and must be resolved by reference to the Plan itself. See In re Mondava Care Center, 254 B.R. 167 (Bankr. N.D. Ohio 2000); In re Board of Directors of Hopewell Intern. Ins. Ltd., 238 B.R. 25 (Bankr. S.D.N.Y. 1999).

The McGreevey Defendants reliance on the Plan provisions that provide for no release of certain fraudulent conveyance claims is misplaced. The Plan provisions provide no support for the McGreevey Defendants' assertions that they may pursue the fraudulent conveyance action in Montana state court. The release language of the Plan simply provides that certain types of claims will remain claims subject to allowance or disallowance in accordance with the claims objections and bankruptcy process. The McGreevey Defendants, having filed their proofs of claims, subjected themselves to the jurisdiction of the Bankruptcy Court to resolve their claims and may not seek allowance or disallowance of those claims outside of the Bankruptcy Court's jurisdiction.

As the Bankruptcy Court correctly held, it is a well established principle of bankruptcy law that an alleged creditor which files a claim in bankruptcy court triggers the process of "allowance and disallowance of claims," subjecting such creditor to the bankruptcy court's jurisdiction. Langenkamp v. Culp, 498 U.S. 42, 44 (1990). Upon consideration of the record and the argument of counsel, the Bankruptcy Court held:

> Not only is there a close nexus in the cause sub judice, there is complete nexus for this Court to entertain jurisdiction to preserve the implementation and consummation of the plan for the plan creditors where, as here, the McGreevey class seeks erroneously, and without legal basis, to upset the entire underpinnings of the confirmed plan of reorganization by asserting a constructive trust over the Montana utility assets which form the bases of the success of the plan and are assets of the bankruptcy estate.

Order, p.9. The Bankruptcy Court's grant of a preliminary injunction was not in error where the McGreevey Defendants' proofs of claim filed in NorthWestern's bankruptcy case and the assertions in the Montana State Court Litigation are identical. The Bankruptcy Code and applicable case law clearly provides that the filing of a proof of claim subjects the creditor to the jurisdiction of the bankruptcy court. Accordingly, the McGreevey Defendants were properly enjoined from pursuing the Montana State Court Litigation and any determination of their claims is subject to the Bankruptcy Court's jurisdiction.

Moreover, the McGreevey Defendants assertions that the Montana utility assets are not part of the estate is incorrect. As set forth in the Confirmation Order, the assets upon which the McGreevey Defendants seek to impose a constructive trust were "dealt with" by the Plan. Bankruptcy law clearly provides that property dealt with by a confirmed plan is free and clear of all claims and interests post-confirmation, unless the plan specifically provides otherwise. See, e.g., In re Regional Bldg. Systems, 251 B.R. 274 (Bankr. D. Md. 2000); In re Jay Bee Enterprises, Inc., 207 B.R. 536 (Bankr. E.D. Ky. 1997). The Confirmation Order and Judge

Case's oral ruling confirming the Plan specifically provided that there was no constructive trust imposed on NorthWestern's assets. See Confirmation Order, pp. 44-45. Judge Peterson also agreed that no such trust existed:

> The substance of the transaction, under the UPA, concurred in by the MPC shareholders, plainly provided for the sale and purchase of the utility assets between MPC and NOR for $1.1 billion dollars. That sum was paid and received by MPC for its benefit and the benefit of its concurring shareholders. That fact is a given! Thus, when the transaction was completed by November 15, 2002, and the assets passed on to NOR through the various limited liability companies, the debtor/creditor relationship between NOR and MPC and its shareholders was satisfied, and therefore terminated. As a result, when NOR sought bankruptcy relief under chapter 11, MPC and its shareholders were no longer a creditor of NOR. This situation is fatal to the McGreevey class's state court action under the Montana Fraudulent Transfer Act as a matter of law.

Order, p. 8. As set forth above, the McGreevey Defendants, unlike other creditors in the case, did not object to the use of the Montana utility assets prior to confirmation. The McGreevey Defendants cannot now assert that the assets were held in constructive trust. To allow the McGreevey Defendants to pursue any remedy which would subject the Montana utility assets to a constructive trust "would stand the confirmed plan of reorganization on its head, for the entire basis of the chapter 11 plan rested upon the utilization, implementation and consummation of the acquired Montana utility assets." Order p. 8. In light of the significance of the McGreevey Defendants' asserted claims and the effects any such claim may have on the confirmed Plan, the Bankruptcy Court did not err in enjoining the Montana State Court Litigation and requiring the McGreevey Defendants to pursue such claim in the bankruptcy court.

### IV. THE BANKRUPTCY COURT DID NOT DETERMINE WHETHER THE CLAIMS ARE SUBJECT TO THE D&O TRUST

The McGreevey Defendants also assert that the D&O Trust provisions of the Plan are not applicable to the McGreevey Defendants' claims. As set forth in the NorthWestern Entities'

prior pleadings, the McGreevey Defendants fail to distinguish between (i) the fact that they filed claims; and (ii) whether and to what extent those claims may be allowed and paid by certain insurance proceeds. There is a distinction between the claims themselves and what assets may be available to pay the claims. NorthWestern's confirmed Plan clearly denotes that distinction and actually provides for treatment of the McGreevey Defendants' claims by channeling those claims to the D&O Trust. The fact that the MPC policies may not be part of the D&O Trust is irrelevant. There are insurance proceeds in the D&O Trust which may well serve as a basis for recovery if the McGreevey Class has an allowed claim against NorthWestern's bankruptcy estate. The fact that the McGreevey Class claims are specifically included as "D&O Trust Claims" is not a mere artifact as suggested by counsel for the McGreevey Class. Rather, that was an intentional treatment with respect to their claims under the Plan. If the McGreevey Class did not like the treatment, then they could have objected prior to confirmation. The McGreevey Defendants are now barred from litigating the treatment of their claims under the confirmed Plan. See, e.g., Miller v. U.S., 363 F.3d at 1004; In re Board of Directors of Hopewell Intern. Ins. Ltd., 238 B.R. at 59 ("where a party-in-interest could or should have objected prior to confirmation, he or she is barred from doing so post-confirmation").

Moreover, as set forth above, the Bankruptcy Court did not decide the issue of whether the McGreevey Defendants' claims were channeled to the D&O Trust. The Bankruptcy Court held:

> NOR's argument, based on the plain language of the plan provisions (provisions 10.5(a) and (e), 13.1, 5.13(b), 1.47 and 4.12) has merit, particularly where the McGreevey class was served with the second amended plan, and did not seek any clarification from the court during the confirmation hearing by way of objection, as to the plan's intent, and how it would affect its constructive trust claim, particularly in light of NOR's position that the MPC D&O policies were not property of NOR's estate. In

> sum, the McGreevey class slept on its rights. However, due to my finding and conclusion that the McGreevey class was not and is not a creditor of NOR pre-petition I need not pass on NOR's position.

Order, p. 12. The McGreevey Defendants' appeal of this issue is premature as the Bankruptcy Court has not issued any ruling on the matter. Specifically, the Court goes on to hold that "[i]f the McGreevey class wishes to preserve its alleged pre-petition claim, it must do so in the bankruptcy forum where it initially sought relief by filing their proofs of claim and seeking permission to file an adversary proceeding to assert its rights." Order, p. 13. The Bankruptcy Court's Order expressly states that it does not determine the issue regarding whether the McGreevey Defendants' claims are subject to the D&O Trust Channeling Injunction. Accordingly, the McGreevey Defendants' appeal of the Bankruptcy Court's Order is not appropriate at this time.

## V.    THE MCGREEVEY DEFENDANTS' CLAIMS ARE SUBJECT TO THE BANKRUPTCY PROCESS

As discussed above the McGreevey Defendants' pre-petition claims are subject to the allowance and disallowance process provided by the Plan and the Bankruptcy Code. The Bankruptcy Court's Order does not preclude the McGreevey Defendants from having their claims determined in the appropriate jurisdictional forum, the Bankruptcy Court. The Bankruptcy Court found:

> If the McGreevey class wishes to preserve its alleged pre-petition claims, it must do so in the bankruptcy forum where it initially sought relief by filing their proofs of claim and seeking permission to file an adversary proceeding to assert its rights. It is in the public interest to preserve the integrity of the bankruptcy process from collateral attack post-confirmation.

Order, p. 13.

The McGreevey Defendants may pursue their claims to a final determination regarding whether such claims are "dealt with" in the Plan and channeled to the D&O Trust before the Bankruptcy Court. Only when the Bankruptcy Court issues a final order on the allowance or disallowance of the McGreevey Defendants' claims should an appeal of the treatment of the claims be allowed. The determination of the McGreevey Defendants' claims in another forum allows the McGreevey Defendants to circumvent the confirmed Plan and the Bankruptcy Code.

## Conclusion

Based on the foregoing, the NorthWestern Entities respectfully request that this Court deny the Motion and grant such other relief as the Court deems just and appropriate.

[signatures on next page]

Dated: December 22nd, 2005


PAUL, HASTINGS, JANOFSKY & WALKER LLP
600 Peachtree Street
Suite 2400
Atlanta, GA 30308
Jesse H. Austin, III
Karol K. Denniston
Telephone: (404) 815-2400

And

GREENBERG TRAURIG, LLP

_____
Victoria Watson Counihan (No. 3488)
William E. Chipman, Jr. (No. 3818)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
Telephone: (302) 661-7000

*Co-Counsel for NorthWestern Corporation*


BROWNING, KALECZYC, BERRY & HOVEN

_____
Kimberly A. Beatty
Stanley T. Kaleczyc
139 North Last Chance Gulch
P.O. Box 1697
Helena, MT 59604-1697
Telephone: (406) 553-6820


*Counsel for Clark Fork and Blackfoot LLC and
NorthWestern Corporation*